John P. and Eleanor Murdoch v. Commissioner. Henrietta O. Murdoch v. Commissioner.
Murdoch v. Commissioner
Docket Nos. 89551, 92922.
United States Tax Court
T.C. Memo 1962-196; 1962 Tax Ct. Memo LEXIS 113; 21 T.C.M. (CCH) 1061; T.C.M. (RIA) 62196; August 16, 1962
*113 David P. Brown, Jr., Esq., and Thomas B. Harper, Esq., for the petitioners in Docket No. 89551. Henry D. O'Connor, Esq., 129 Peyton Ave., Haddonfield, N. Y., for the petitioner in Docket No. 92922. Malin VanAntwerp, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies in the income tax of petitioners for the year 1957: John P. and Eleanor Murdoch
$9,709.99
Henrietta O. Murdoch
4,912.51
The principal issue is whether a payment of $16,500 in 1957 by John P. Murdoch to Henrietta O. Murdoch was a capital transaction or one giving rise to ordinary income to the recipient and a deductible expense to the payor. A subsidiary issue is whether $3,582.30 in legal expenses paid by John P. Murdoch in connection with the foregoing is deductible by him. Findings of Fact Some of the facts have been stipulated, and, as stipulated, they are incorporated herein by reference. John P. and Eleanor Murdoch, husband and wife, are residents of Ardmore, Pennsylvania. They filed a joint income tax return for the year 1957 with the district director of internal revenue at Philadelphia. Eugene M. *114 Murdoch, John's brother, died in September 1945. Henrietta O. Murdoch, Eugene's widow, is a resident of Philadelphia, Pennsylvania. She filed an individual income tax return for the year 1957 with the district director of internal revenue at Philadelphia. John P. Murdoch Company is a corporation organized under the laws of Pennsylvania in 1932, and has its office and principal place of business at 3630 Haverford Avenue, Philadelphia, Pennsylvania. Its outstanding stock was owned to the extent of 49 shares (49 percent) by John, and 49 shares (49 percent) by Eugene on the date of the latter's death. John was president and a director of the corporation. Eugene had been an employee of the corporation for many years. For some years prior to his death in 1945, he had been physically unable to render any personal services but continued to draw a salary to the date of his death. During the period of Eugene's illness John operated and managed the business. In a conversation with Eugene, John complained that he had been carrying the entire load of the business, working 12 to 14 hours a day, and that he was not satisfied to have Eugene share in one-half of the profits while rendering no *115 services. Eugene stated that he was interested only in his share of the physical properties of the corporation, the machinery and building, and that he was agreeable to having some arrangement worked out which would preserve his interest in those assets. Nothing was done during the remainder of Eugene's life to limit his interest along these lines. At the date of Eugene's death in September 1945, the fixed assets of John P. Murdoch Company consisted of a building located at 3630 Haverford Avenue, Philadelphia, and certain production equipment. The building had been acquired by the corporation about two years earlier at a cost of $12,500, but subject to a purchase money mortgage of $9,000. On the date of Eugene's death, the building was carried on the books of the company at $10,500, and the mortgage remaining unpaid amounted to $7,000. The production equipment was carried on the company's books at $1,800. Upon the death of Eugene, his widow, Henrietta, acquired his entire interest in the stock of the corporation. Shortly after Eugene's death, John and Henrietta had a conversation in the office of her attorney along the same lines as the foregoing conversation between John and *116 Eugene prior to the latter's death. John also stated, in substance, that unless some suitable arrangements were worked out, he would "close the business". And he told her further that, if agreeable to her, he would form a new corporation to which the fixed assets of John P. Murdoch Company would be transferred in exchange for its stock, and that 499 (49 percent) of such shares would be issued to her. She agreed to accept 499 shares of stock of the new corporation for the 49 shares of stock of John P. Murdoch Company owned by her. At this meeting she and John were represented by legal counsel. John thereupon personally acquired from John P. Murdoch Company all of its fixed assets, consisting of the real estate and production equipment mentioned above. As consideration for his acquisition of these fixed assets, John credited $5,000 against an account payable to him by John P. Murdoch Company representing prior unpaid salaries to him, and advances of funds by him to the corporation. John caused the 3630 Haverford Avenue Corporation to be organized under the laws of Pennsylvania on March 1, 1946. Its office and place of business, at all times material herein, was at 3630 Haverford *117 Avenue, Philadelphia. Its authorized capital structure consisted of 1,000 shares of common stock, all of which were issued upon its organization to John in exchange for the above-mentioned real estate and production equipment. On March 29, 1946, the shares of its capital stock were held as follows: Henrietta O. Murdoch
499 shares
John P. Murdoch
498 shares
Eleanor Murdoch
1 share
Edward Wiler
2 shares
The 499 shares of 3630 Haverford Avenue Corporation owned by Henrietta were acquired by her on March 29, 1946, from John. At or about that date she transferred to John the 49 shares of stock of John P. Murdoch Company which she had acquired from her deceased husband. John thereupon became the owner of 98 shares (98 percent) of the stock of John P. Murdoch Company. The real estate and production equipment acquired by 3630 Haverford Avenue Corporation from John were the only assets ever owned by this corporation. By lease dated December 31, 1946, it leased these assets to John P. Murdoch Company at a net rental of $1,200 per year, plus taxes and mortgage interest. At the insistence of Henrietta that the rent should always have been at least $5,000 per year, a *118 new lease of the real estate only was entered into on April 1, 1955, at a total rental of $5,000 per year, but without any obligation of the lessee to pay mortgage interest and taxes. No income, other than this rent, was received by 3630 Haverford Avenue Corporation at any time material herein. John was president, and a director of John P. Murdoch Company from 1945 through 1957, and was president and a director of 3630 Haverford Avenue Corporation from the date of its organization until its liquidation in December 1957. He had no other business activity during this period. Henrietta was a director of 3630 Haverford Avenue Corporation from April 30, 1955, until she disposed of her shares in that corporation. John received no compensation for his services to 3630 Haverford Avenue Corporation at any time during its existence. He did receive, for services rendered to John P. Murdoch Company, salaries and bonuses in the following amounts: 1945
$ 10,000.00
1946
15,000.00
1947
15,000.00
1948
20,611.00
1949
18,062.00
1950
17,658.94
1951
20,812.36
1952
18,414.09
1953
28,423.44
1954
28,022.79
1955
33,746.39
1956
32,858.23
1957
30,321.82
$288,931.06
*119 Henrietta, through legal counsel, filed a complaint in equity against John in the Common Pleas Court No. 1 of Philadelphia County, Pennsylvania - which action was docketed as No. 7776 - In Equity - June Term, 1955. The complaint read, in part, as follows: * * *
3. Plaintiff is the owner of 49% of the stock of 3630 Haverford Avenue Corporation, a corporation organized and existing under the laws of Pennsylvania. 4. The defendant is the owner of 49% of the stock of the 3630 Haverford Avenue Corporation and controls the remaining two shares. The defendant is also the majority stockholder of the John P. Murdoch Company, a corporation existing under the laws of Pennsylvania. * * *
6. Plaintiff's husband died in September, 1945 and thereafter the defendant, by means of false representations as to the value of the shares of the John P. Murdoch Company, received by her by the Will of her husband, fraudulently induced the plaintiff to exchange all of her shares in the John P. Murdoch Company for 49% of the shares of the 3630 Haverford Avenue Corporation which was then formed by the defendant for the purpose of defrauding the plaintiff of her rights in the John P. Murdoch Company. *120 7. The defendant by reason of his control of the majority of the shares of both corporations, made himself President and Chairman of the Board of Directors of both corporations, which he still remains. 8. The defendant caused to be transferred to the 3630 Haverford Avenue Corporation the real estate and equipment belonging to the John P. Murdoch Company for the sum of $1,896.84. 9. On the 31st day of December, 1946, the defendant caused to be executed a lease between the 3630 Haverford Avenue Corporation and the John P. Murdoch Company, leasing all of the real estate and equipment, the entire assets of the 3630 Haverford Avenue Corporation, to the John P. Murdoch Company for the sum of $1,200 per year plus taxes and interest on the mortgage on the said real estate. 10. The fair rental value of the said property and machinery was at that time and has since remained in excess of $6,500 per year. * * *
13. On the 19th day of March, 1955, the plaintiff demanded of the defendant an accounting of the activities and financial status of the 3630 Haverford Avenue Corporation and an adjustment of the rental provided in the lease described in paragraph 9 above, as a result of which *121 the defendant agreed to a new lease negotiated the 30th day of April, 1955 wherein the stipulated rental is $5,000. * * *
WHEREFORE, plaintiff demands judgment against the defendant: (a) For an accounting of all the profits made by him by virtue of his ownership of 50% of the stock of the John P. Murdoch Company since the 1st day of January, 1945. (b) 49% of the fair rental value of the real estate and machinery leased by the 3630 Haverford Avenue Corporation to the John P. Murdoch Company from December 31, 1946 until December 31, 1954. (c) A complete accounting of all transactions of the John P. Murdoch Company and the 3630 Haverford Avenue Corporation from the 1st of January, 1945 to date. (d) Such other and further relief as this court may deem appropriate in the premises. * * *
During the time the case was being prepared for trial, John had the real estate and machinery owned by 3630 Haverford Avenue Corporation appraised. Appraisals of the real estate made by three appraisers ranged from $33,000 to $36,500. A large handler of sheet metal and machinery in Philadelphia appraised the machinery at $1,800. The litigation was settled on December 11, 1957, before *122 trial of the action. On that date, Henrietta executed a document designated "Release", which provided as follows: KNOW ALL MEN BY THESE PRESENTS that I, HENRIETTA O. MURDOCH, individually and as Executrix of the estate of Eugene Kainey Murdoch, Deceased, for and in consideration of the sum of Sixteen Thousand Five Hundred Dollars ($16,500) the receipt of which is hereby acknowledged, do hereby both in my individual and fiduciary capacity discharge and release JOHN P. MURDOCH, his heirs and assigns, from any claims, demands, actions or causes of action including, but not limited to, all claims encompassed in a certain equity action commenced by me against John P. Murdoch in the Court of Common Pleas No. 1 of Philadelphia County, June Term 1955, No. 7776 and also including, but not limited to, any claims which Henrietta O. Murdoch may have against John P. Murdoch arising from John P. Murdoch's relations with her, or her deceased husband, Eugene Kainey Murdoch, or with the estate of her deceased husband or arising from the activities of John P. Murdoch relating to the John P. Murdoch Company and/or the 3630 Haverford Avenue Corporation and I do further discharge and release the JOHN *123 P. MURDOCH COMPANY, a Pennsylvania corporation, and the 3630 HAVERFORD AVENUE CORPORATION, a Pennsylvania corporation, from any and all claims, demands, actions or course of action. On the same date, December 11, 1957, Henrietta executed a document designated "Bill of Sale", which provided as follows: KNOW ALL MEN BY THESE PRESENTS, that I, HENRIETTA O. murdoch,/ widow of Eugene Kainey Murdoch, for and in consideration of the sum of Twenty Thousand Dollars ($20,000) the receipt of which is hereby acknowledged, do hereby sell, assign and convey all my stock in the 3630 Haverford Avenue Corporation, a Pennsylvania corporation, to wit, 499 shares of the capital stock thereof, unto John P. Murdoch, his heirs and assigns, absolutely. Henrietta's signature on each of the documents executed by her on December 11, 1957, was witnessed by the attorney who represented her in the litigation. On December 11, 1957, John delivered to McBride, Von Moschzisker & Bradley, counsel for Henrietta, his personal checks payable to their order, in the respective amounts of $16,500 and $20,000. The $16,500 check had typed on its face the words "Payment in release of all claims in suit of Murdoch vs. *124 Murdoch C.P.I." The $20,000 check had typed on its face the words "Payment in full for 499 shares of 3630 Haverford Ave. Corp. Stock". Each of the checks was endorsed by the payees. During the year 1957 John paid Bernard J. Kelley, his counsel, attorney's fees and costs amounting to $3,582.30 for legal services rendered in connection with the litigation and settlement. In the joint income tax return filed by John and his wife for the year 1957, a deduction was claimed under "miscellaneous" in the amount of $20,082.30, which represented the $16,500 paid to Henrietta and the attorney's fees of $3,582.30. This deduction was disallowed by the respondent. In her income tax return for the year 1957, Henrietta treated the entire amount of $36,500 received from John as proceeds of the sale of "John P. Murdoch Co." and the resulting gain as a long-term capital gain. Respondent determined that $16,500 of the $36,500 received by her did not constitute a long-term capital gain and was taxable as ordinary income. Opinion RAUM, Judge: The Commissioner determined that the $16,500 payment to Henrietta constituted ordinary income rather than capital gain to her; at the same time he also determined *125 that John could not deduct the amount thus paid. The Government recognizes that these determinations are inconsistent and does not seek to have both of them sustained. The real parties litigant are Henrietta and John. We sustain John's version of the transaction, with the consequence that the $16,500 payment must be treated as ordinary income to Henrietta and deductible by him. Henrietta contends that the $16,500 together with the $20,000 which she received from John on the same day, or a total of $36,500, represents consideration for the sale of a capital asset. Neither the Commissioner nor John disputes the fact that $20,000 was paid for a capital asset, namely, Henrietta's stock in 3630 Haverford Avenue Corporation. But the $16,500 payment, although arising out of the same general transaction, was an entirely distinct payment, and did not represent further consideration for any capital asset. The evidence indicates that the corporation's assets were not worth more than $40,000, and it seems clear in the circumstances of this case that the $20,000 constituted full payment for her 49 percent stock interest. The $16,500 payment was received in compromise of Henrietta's equity suit *126 against John. Its taxable nature must be considered in the light of the claim from which it arose. The main thrust of her complaint was an accounting from John in respect of profits to which she, somehow or other, claimed to be entitled. The $16,500 payment was in response to that claim. It was not consideration for a capital asset, and was taxable to her as ordinary income. [1]
As to the deductibility of the $16,500 by John, the Government's reply brief takes the position that there be "consistent treatment of the payment" for both cases. Accordingly, we hold that John is entitled to deduct that amount. Also, the brief states that "respondent has no objection to treatment *127 of the fee [$3,582.30] in the same manner as the $16,500.00 is treated." Decision will be entered for the petitioners in Docket No. 89551. Decision will be entered for the respondent in Docket No. 92922. Footnotes
1. Henrietta's petition in this Court attempted to raise an alternative issue, that if the $16,500 payment be held to be ordinary income to her she is entitled to the benefits of Section 1305, I.R.C. 1954. We do not reach the question whether the amount thus received by her could qualify as an "award in a civil action" under Section 1305, because no mention is made of the Section 1305↩ point either in her original brief or reply brief, and it must therefore be deemed to have been abandoned.